**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ALPHA COGNETICS LLC and**
**ALPHA COGNETICS TECH LLC**                                     **PLAINTIFFS**

**v.**                                               Civil Action No. 3:18-cv-440-CWR-FKB

**ROGER BLOUCH, SUSAN BLOUCH,**
**and ADVANCED HF SOLUTIONS, INC.**                              **DEFENDANTS**

## VERIFIED COMPLAINT

Plaintiffs Alpha Cognetics LLC and Alpha Cognetics Tech LLC (collectively, "Alpha Cognetics") file this Complaint for tortious interference with business relations, declaratory judgment seeking a declaration of noninfringement, unenforceability, and/or invalidity of United States Design Patent No. D791, 746 S, breach of fiduciary duty, violation of the Lanham Act, defamation, conversion, trademark infringement, violation of the Mississippi Trade Secrets Act, and violation of the Defend Trade Secrets Act of 2016 against Defendants Roger Blouch, Susan Blouch, and Advanced HF Solutions, Inc. (collectively, "Defendants"), stating as follows:

## NATURE OF THE ACTION

1.     This is an action to end Defendants' unauthorized and infringing actions of patented inventions concerning a compact dipole antenna used in radio communications.  Alpha Cognetics, herein and by separate motion, seeks preliminary and permanent injunctive relief to prevent Defendants from continuing to infringe its rights, tortuously interfering with Alpha's business relations, and other tortious conduct.

## THE PARTIES

2.     Alpha Cognetics LLC is a limited liability company organized and existing under the laws of the State of Mississippi.  Alpha Cognetics has two members, one of which is a

natural citizen of Mississippi and the other is an LLC, which in turn has one member who is a natural citizen of Mississippi.

3.     Alpha Cognetics Tech LLC is a wholly owned subsidiary of Alpha Cognetics LLC.

4.     Roger Blouch ("Mr. Blouch") is a former officer of Alpha Cognetics LLC and a natural citizen of the State of Texas who may be served with process at 13192 County Road 236, Oakwood, Texas 75855, by certified mail, or wherever he may be found.

5.     Susan Blouch ("Mrs. Blouch") is a natural citizen of the State of Texas who may be served with process at 13192 County Road 236, Oakwood, Texas 75855, by certified mail, or wherever she may be found.

6.     Advanced HF Solutions, Inc. ("Advanced HF Solutions") is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Oakwood, Texas. Advanced HF Solutions may be served with process through its registered agent, Roger D. Blouch, at 13192 County Road 236, Oakwood, Texas 75855.

## JURISDICTION AND VENUE

7.     Alpha Cognetics' claims in this case arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, the Lanham Act, 15 U.S.C. § 1125, and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1838, *et seq.*

8.     This Court has jurisdiction over the federal law claims under 28 U.S.C. § 1338, which directs that District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights, and trademarks, and under 28 U.S.C. § 1331,

which pertains to civil actions arising under (other) laws of the United States (*e.g.* the Defend Trade Secrets Act).

9.      Furthermore, the Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000, exclusive of interest and costs, and the suit is between citizens of different states.

10.      This Court has personal jurisdiction over Defendants pursuant to Miss. Code Ann. § 13-3-57.  Defendants have been present in and conducted business and work in the State of Mississippi and this District and have committed torts at least in part in the State of Mississippi and in this District as described below. Defendants' contacts with the State of Mississippi, including their presence and work performed in this District, give rise to Alpha Cognetics' claims.

11.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to this action occurred in this District, and Defendants have committed torts at least in part in this District.

## FACTUAL BACKGROUND

12.      Alpha Cognetics is engaged primarily in the development and sale of compact dipole radio antennas, referred to as the Alpha Cognetics Antenna.

13.      The Alpha Cognetics Antenna is based on an original concept by Robert T. "Ted" Hart in 1996, who worked to create a smaller, more convenient, but equally efficient, high frequency antenna that could be mounted on roof tops, vehicles, and smaller spaces.  Hart referred to his invention as the Poynting Vector Antenna. With assistance from Paul V. Birke, Hart invented the antenna element, which based on its optimum physical characteristics and function, was referred to as the "Flute."

14.     On October 18, 2005, the United States Patent and Trademark Office ("USPTO") issued Ted Hart U.S. Patent No. 6,956,535 B2 entitled, "Coaxial Inductor and Dipole EH Antenna" ("the '535 Patent").  A true and correct copy of the '535 Patent is attached hereto as Exhibit A.

**Alpha Cognetics Acquires the Poynting Vector Antenna Intellectual Property**

15.     In 2011, Hart, through his company EH Antenna Systems, LLC, licensed the '535 Patent, related patents, and all intellectual property, including common law copyrights, trademarks, and trade dress to Alpha Cognetics. *See* License Agreement, attached hereto as Exhibit B (the "License Agreement").

16.     The License Agreement granted Alpha Cognetics the exclusive rights to design, develop, manufacture, and sell antennas based on the '535 Patent.

17.     Thereafter, in 2013, Hart co-authored a book entitled *The Poynting Vector Antenna*, which retains a copyright.  A true and correct copy of *The Poynting Vector Antenna* is to be filed under seal upon order of the Court as **Sealed Exhibit 1**. Specifically, Chapter 19 of the book details Hart's Flute Poynting Vector Antenna design, its function, and assembly into an antenna.

18.     In 2014, Hart, again through EH Antenna Systems, LLC, assigned the intellectual property related to the '535 Patent to Alpha Cognetics.  *See* Assignment of Patent, attached hereto as Exhibit C (the "Patent Assignment").

19.      Prior to the Patent Assignment, but after the License Agreement, Alpha Cognetics reduced Hart's antenna element design to drawings referenced as AC-A1-4010, AC-A1-4011, AC-A1-4012, and AC-A1-4013. The drawings are dated in 2012, are titled to Alpha Cognetics, LLC, and both the faces of the document and the creation date metadata of the

electronic files show that they were created June 18, 2012.  These drawings are to be filed under seal upon order of the Court as **Sealed Exhibit 2**, and are referred to herein as the "Alpha Cognetics Drawings."

20.     Ted Hart and Barrie McArthur, Alpha Cognetics' CEO, co-wrote an article titled "A New HF Antenna Concept" that appeared in the February 2013 issue of MissionCritical Communications magazine. The article plainly displayed the Alpha Cognetics Antenna with the flute antenna element. The issue's cover page and the article's first page are attached hereto as Exhibit D.

21.     Pursuant to the License Agreement and Patent Assignment, Alpha Cognetics manufactured, marketed, and sold antenna assemblies covered by the '535 Patent called the Alpha Cognetics Antenna.

## Roger Blouch Becomes an Officer of Alpha Cognetics

22.     In 2012, Ted Hart and Barrie McArthur, Alpha Cognetics' CEO, traveled to Mineral Wells, Texas, to test the antenna at Antenna Products' antenna lab, also called an antenna farm.

23.     Ira Wiesenfeld was a tester for Antenna Products, and became interested in the antenna. Mr. Hart, Mr. McArthur, and Mr. Wiesenfeld later took the antenna to Mr. Wiesenfeld's home in the Dallas area. It was here that Mr. Blouch first came in contact with the antenna.

24.     Mr. Blouch became interested in the antenna. Mr. and Mrs. Blouch travelled to McArthur's home in Canton, Mississippi, to discuss the Blouches' additional involvement with Alpha Cognetics. Mr. McArthur agreed to make Mr. Blouch Alpha Cognetics' Chief Technological Officer / Vice President of Engineering.

25.     Upon information and belief, Mrs. Blouch was a bookkeeper and administrative agent alongside Mr. Blouch.

26.     Through their employment, the Blouches were very familiar with the Alpha Cognetics Antenna, and at one time, they were in possession of 20 assembled antennas owned by Alpha Cognetics. The Blouches were in possession of the antennas and other Alpha Cognetics' property for purposes of testing and recording data at their home and antenna farm in Oakwood, Texas.

27.     Mr. and Mrs. Blouch travelled to Mississippi on Alpha Cognetics business multiple times. On one of these trips, Mr. Blouch installed the first Alpha Cognetics Antenna at the Mississippi State Hospital at Whitfield. A redacted copy of the payment check and a photo of Mr. Blouch installing the Alpha Cognetics Antenna on the roof of the State Hospital at Whitfield is attached hereto as Exhibit E.

28.     Mrs. Blouch accompanied Mr. Blouch on this trip.[1] Mr. Blouch travelled to Mississippi upwards of 6-10 times on Alpha Cognetics business. When Mr. McArthur would be flying from Jackson to another location on Alpha Cognetics business, Blouch would drive to Mississippi from Texas, then fly out together with McArthur.

**Mr. Blouch's Actions Force His Termination**

29.     One of these trips was to Icom in Seattle for a meeting to market the Alpha Cognetics Antenna. At this meeting, Mr. Blouch became belligerent to the point that Mr. McArthur was forced to stop the meeting and remove Mr. Blouch. Mr. McArthur later tried to formally supervise Mr. Blouch's conduct by way of a written agreement, but Mr. Blouch refused

---

[1] Interestingly, Mr. Blouch demanded that he be paid through his wife, with all payments be directed to "Susan Blouch dba." Mr. McArthur complied. Over four years, Alpha Cognetics paid Susan Blouch upwards of $100,000 for Roger's work as CTO/VP-Engineering. The Blouches' intent behind this arrangement is unknown, but will be the subject of discovery in this action as it appears at least in part to have been a setup for Susan's participation in the '746 design application.

to sign. At this point, recognizing the liability posed to the company, Mr. McArthur terminated Mr. Blouch's employment.

30.    On August 23, 2016, Mr. McArthur demanded that Mr. Blouch return all Alpha Cognetics property to Mr. McArthur, including the drawings.

31.    After terminating Mr. Blouch, Alpha Cognetics worked extensively to refine the Alpha Cognetics Antenna design, increasing its utility, and actively marketing it for sale and distribution through potential customer meetings and demonstrations.  Upon information and belief, the Blouches were aware of these activities.

**Alpha Cognetics Demands Return of All Property**

32.    Also following Mr. Blouch's termination, on September 9, 2016, Alpha Cognetics sent a letter demanding that the Blouches return all of Alpha Cognetics' property, including parts of the Alpha Cognetics Antenna and the AC-A-4010 drawing.  A copy of the Demand Letter from Counsel for Alpha dated September 9, 2016 is attached hereto as Exhibit F.

33.    Not only did the Blouches refuse to pick up certified mail at their post office box, they also refused to accept personal delivery of the Demand Letter by a private process server. *See* Affidavit of Non-Service, attached hereto as Exhibit G.

34.    When Mr. Blouch finally responded to email communications with counsel for Alpha Cognetics, he represented that he had no antennas, parts, or other Alpha Cognetics property.  *See* October 4, 2016 Email from Roger Blouch, attached hereto as Exhibit H, ("we did return everything").

**The Blouches Procure a Design Patent by Committing Fraud upon the USPTO**

35.    While Alpha Cognetics was demanding the return of its property, the Blouches were surreptitiously in the process of creating a separate entity to compete with Alpha Cognetics.

The Blouches were also in the process of filing a design patent application for the flute antenna element.

36.     On August 15, 2016, Advanced HF Solutions was created as a domestic for-profit corporation in the State of Texas. Listed as both directors and owners are Roger Blouch and Susan Blouch. The mailing address of Advanced HF Solutions is the same as the Blouches' Oakwood, Texas residence.

37.     A month later, on September 21, 2016, the Blouches filed an application for a Design Patent for an "Antenna Flute" and falsely represented to the United Stated Patent and Trademark Office ("USPTO") that they were the inventors of the "Antenna Flute."

38.     The Blouches included Alpha Cognetics' confidential and copyrighted flute antenna element drawings in their application, specifically, mirror images of the illustrations found the Alpha Cognetics Drawings, despite the fact that Alpha Cognetics previously demanded return of this information, which the Blouches indicated they had returned.

39.     On July 11, 2017, the USPTO issued U.S. Design Patent No. D791,746 S entitled "Antenna Flute" to the Blouches ("the '746 Patent"). A copy of the '746 Patent is attached hereto as Exhibit I.

40.     In their application for the '746 Patent, the Blouches deliberately misrepresented to the USPTO that they were the inventors of the "Antenna Flute" shown in Figure 1 below.

**Figure 1**: Illustration from the '746 Patent



41.     The Blouches failed to disclose to the USPTO that there is no ornamental design aspect of the flute antenna element. The appearance of the antenna element is a byproduct of the function. As stated below, this is grounds for invalidation of the '746 Patent as it is not a candidate for an ornamental design patent under 35 U.S.C. § 171.

42.     The Blouches willfully ignored the fact that Hart previously invented the Flute Antenna, and that Alpha Cognetics previously copyrighted drawings of the Flute Antenna. Furthermore, the Blouches intentionally concealed from the USPTO the existence of both the Ted Hart book and the MissionCritical Communications magazine article, both of which were published.

43.     The only difference in the Blouch "Antenna Flute" Design and the Alpha Cognetics Drawings is the orientation of the depicted image. They are literally mirror images. Notably, of course, the Alpha Cognetics Drawings were created four years before the Blouches filed their application.

44.     Based on the fact that the '746 Patent application contains mirror images of the Alpha Cognetics drawings and was filed contemporaneously with Mr. Blouch's termination from Alpha Cognetics, it is now clear that Mr. Blouch falsely represented that he had returned all of Alpha Cognetics property. Alpha Cognetics rightfully relied on this false material representation. As stated below, Alpha Cognetics has been harmed as a result.

45.     In late May 2018, Mr. McArthur received a "Cease and Desist Letter" from attorney Steven Shaver with the Fishman Jackson Ronquillo firm in Dallas. *See* Shaver Cease and Desist, attached hereto as Exhibit J. The letter alleged that Alpha Cognetics was infringing on the '746 Patent, demanded that Alpha Cognetics cease and desist its marketing and sale of the Alpha Cognetics Antenna, and represented that Mr. Shaver and the Blouches would "advise"

unspecified "government, radio industry, and financial industry" personnel of the patent. *Id.*

46.     In response, Alpha Cognetics sent a letter to Attorney Shaver clarifying that the

Blouches did not invent the flute antenna element design and notified him that, therefore, the

Blouches had committed fraud upon the Patent and Trademark Office by falsely representing

that they were the inventors. *See* Response to Cease and Desist Letter, attached hereto as Exhibit

K. The letter also demanded that the Blouches cease and desist any interference with Alpha

Cognetics' dealings with Codan Radio Communications ("Codan"). *Id.*

### Mr. Blouch and Advanced HF Solutions Commence Tortious Interference

47.     Mr. Blouch, acting on behalf of Advanced HF Solutions, tortiously interfered with

Alpha Cognetics' business relations on at least one known and significant occasion, which is the

crux of this action and the need for injunctive relief.

48.     On June 20, 2018, Mr. Blouch contacted Codan with whom Alpha Cognetics had

at the time engaged in lengthy discussions regarding potential sales.  As one of the leading radio

communications equipment manufacturers and dealers, Codan was a preeminent business

prospect for the Alpha Cognetics Antenna.  Alpha Cognetics arranged a demonstration of the

Alpha Cognetics Antenna with Codan's representatives to discuss Codan carrying the Alpha

Cognetics antenna in its catalog.

49.     A few days prior to the arranged demonstration, Mr. Blouch sent at least one

email from an Advanced HF Solutions email address to Codan misrepresenting that the '746

Patent is valid and enforceable.  *See* Email from Roger Blouch dated June 20, 2018, attached

hereto as Exhibit L.

50.     Advanced HF Solutions, acting through Mr. Blouch, misrepresented to Codan that

Alpha Cognetics had been "representing, exhibiting and offering for sale [the '746 Patented]

design." *Id.* Mr. Blouch stated that Alpha Cognetics "misinformed" Codan about its design and requested Codan "cease any involvement" with Alpha Cognetics regarding the Blouches' claimed patented design of the Flute Antenna. *Id.*

51.     Further, Mr. Blouch made false and defamatory statements concerning the Alpha Cognetics Antenna, claiming that its design is "inferior in operation, fabrication, quality, and have had electrical/mechanical concerns." *Id.*

52.     In an effort to undermine Alpha Cognetics' business relationship with Codan, Mr. Blouch then offered to sell Codan the Advanced HF Solutions Flute Antenna instead. *Id.*

53.     Upon receipt of the malicious email from Mr. Blouch, Codan canceled the demonstration and postponed all dealings with Alpha Cognetics indefinitely.

54.     As a result of Defendants' actions, Alpha Cognetics' business relationships have been damaged in an amount to be determined at trial, but in any event not less than lost revenue of $399,000.00.

## COUNT I:
## <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS</u>

55.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

56.     The above-described actions, words, and conduct of Defendants constituted tortious interference with the business relationship between Alpha Cognetics and Codan.

57.     Defendants were aware of Alpha Cognetics' business relationship with Codan.

58.     Defendants knew, or should have known, that their improper actions, words, and conduct would cause or contribute to injury and damage to Alpha Cognetics' business relationship with Codan.  Their improper actions, words, and conduct therefore constituted

intentional interference with Alpha Cognetics' agreement and business relationship with Codan under Mississippi law.

59.     Defendants' actions were willful.

60.     Defendants knew or should have known that their conduct was without right or justifiable cause as their actions were based on the '746 Patent which was procured through fraud on the USPTO as described below.

61.     As a result of Defendants' tortious actions and conduct, the business relationship between Alpha Cognetics and Codan was postponed indefinitely, proximately causing or contributing to actual, compensatory, and consequential damages to Alpha Cognetics in an amount to be determined at trial, but not less than $399,000, for which Defendants are jointly and severally liable to Alpha Cognetics.

**COUNT II:**
**DECLARATION OF UNENFORCEABILITY OF THE '746 PATENT**

62.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

63.     An actual and justiciable controversy exists between the parties concerning the '746 Patent, which requires a declaration of rights by this Court.

64.     The '746 Patent is unenforceable due to the inequitable conduct of the Blouches during the application process with the USPTO.

65.     A patent applicant owes a duty of candor to the USPTO to disclose all information material to the patentability of its pending claims. 37 C.F.R. § 1.56; MPEP 2001.01 *et seq.* The duty of candor continues until the patent issues.

66.     Information is material to patentability when it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim. 37 C.F.R. § 1.56; MPEP 2001.05 *et seq.*

67.     Material information under 37 C.F.R. § 1.56 includes, for example, information on possible prior public uses and prior invention by another. MPEP 2001.04 *et seq.* "Materiality is not limited to prior art but embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, S.A.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003) (emphasis in original).

68.     The Blouches knowingly failed to disclose material information to the USPTO with intent to deceive the USPTO.

69.     The Blouches knowingly withheld material information from the USPTO, in this case, material information relating to the actual inventor, Ted Hart, and prior-art, including, for example, the 2012 Alpha Cognetics Drawings, Ted Hart's 2013 book, and the 2013 MissionCritical Communications Magazine.

70.     The Blouches also failed to disclose to the USPTO that the appearance of the flute antenna element is a byproduct of its function and thus lacks ornamentality.

71.     The Blouches' failure to disclose material information they were aware of about the flute antenna element meets the threshold level of materiality and intent to mislead.

72.     The information the Blouches failed to disclose was material to their application for the '746 Patent.

73.     As a result of this conduct, the '746 Patent is unenforceable.

74.     Alpha Cognetics requests a declaratory judgment that the '746 Patent is unenforceable based on the Blouches' inequitable conduct.

## COUNT III:
## DECLARATION OF NON-INFRINGEMENT OF THE '746 PATENT

75.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

76.     An actual and justiciable controversy exists between the parties concerning the '746 Patent, which requires a declaration of rights by this Court.

77.     The Alpha Cognetics Antenna does not infringe any claim of the '746 Patent because each and every claim therein is invalid or unenforceable.

78.     Alpha Cognetics is entitled to a declaratory judgment in its favor that the commercial manufacture, use, offer for sale, or sale of the Alpha Cognetics Antenna has not infringed and cannot infringe the '746 Patent.

## COUNT IV:
## DECLARATION OF INVALIDITY OF THE '746 PATENT

79.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

80.     An actual and justiciable controversy exists between the parties concerning the '746 Patent, which requires a declaration of rights by this Court.

81.     The '746 Patent is invalid for failure to meet the patentability requirements under 35 U.S.C. § 101, *et. seq.*

82.     Among other things, there was no unique or distinctive shape or appearance to the '746 Patent not dictated by the function that it performs, and the '746 Patent design of the Flute Antenna lacks ornamentality and novelty and is not proper subject matter.  *See* 35 U.S.C. § 171.

83.     Alpha is entitled to a declaratory judgment that the '746 Patent is invalid.

## COUNT V: DEFAMATION

84.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

85.     Mr. Blouch, acting on behalf of Advanced HF Solutions, falsely represented to Codan that they were the rightful owners of the Flute Antenna patent.  *See* Exhibit L.  The clear implication of Mr. Blouch's statement to Codan was that the flute element was patentable by the Blouches and that Alpha Cognetics was not the rightful owner of the intellectual property of the flute antenna element.

86.     Mr. Blouch also falsely represented to Codan that Alpha Cognetics' products were "inferior in operation, fabrication, quality, and have had electrical/mechanical concerns." *See* Exhibit L.

87.     These false representations were defamatory and harmed Alpha Cognetics' reputation with Codan such that Codan indefinitely postponed its business relationship with Alpha Cognetics.

88.     Mr. Blouch knew or should have known that these false and defamatory statements would harm Alpha Cognetics' business relationship with Codan.

89.     The false and defamatory representations to Codan were not protected by any privilege.

90.     Mr. Blouch knew at the time of the false and defamatory representations to Codan that the representations were false, as the Blouches had extreme familiarity with Alpha Cognetics' ownership of the flute antenna element intellectual property as well as the true inventorship of the Alpha Cognetics Antenna and its flute antenna element.

91.     Additionally, and/or in the alternative, Mr. Blouch's conduct amounts at least to negligence in making the referenced false and defamatory representations to Codan.

92.     Mr. Blouch's false and defamatory representations to Codan proximately caused or contributed to Codan's decision to postpone its agreement with Alpha Cognetics. As a result of the loss of its contract with Codan, Alpha Cognetics has suffered actual, compensatory, consequential, and other damages (including storage costs) in an amount to be proven at trial, but not less than $399,000.

93.     Mr. Blouch made the false and defamatory statements in the course and scope of his employment, membership, affiliation, and/or agency relationships with Advanced HF Solutions, and his defamation of Alpha Cognetics was authorized and/or ratified by Advanced HF Solutions.

94.     Accordingly, Advanced HF Solutions and Mr. Blouch are jointly and severally liable to Alpha Cognetics for all actual, compensatory, and consequential damages arising from such defamation of Alpha Cognetics.

## COUNT VI: BREACH OF FIDUCIARY DUTY

95.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

96.     Prior to his termination, Mr. Blouch was an officer of Alpha Cognetics in his role as Chief Technology Officer and Vice President.  As such, Mr. Blouch owed a fiduciary duty to Alpha Cognetics.

97.     Mr. Blouch did not act with the utmost good faith and loyalty to Alpha Cognetics, which he was required to do as Alpha Cognetics' fiduciary.  By stealing Alpha Cognetics Drawings, claiming the design of the flute antenna element, applying for the '746 Patent

representing that he and Mrs. Blouch were the invetors, and in other acts that will be discovered in this litigation, Mr. Blouch breached his fiduciary duty owed to Alpha Cognetics.

98.     Alpha Cognetics has suffered damages as a result of Mr. Blouch's actions described herein.

## COUNT VII: CONVERSION

99.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

100.    Defendants are in wrongful possession of and have exerted dominion over Alpha Cognetics' intellectual property, specifically, the Alpha Cognetics Drawings.

101.    Defendants have converted the Alpha Cognetics Drawings for their own use in exclusion of and inconsistent with Alpha Cognetics' rights to same.

102.    Defendants' actions have caused damaged to Alpha Cognetics, and Defendants are liable to Alpha Cognetics for their conversion.

## COUNT VIII: FRAUD

103.    Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

104.    The Blouches made a false representation to the USPTO that they invented the flute antenna element.

105.    These representations were material in that it was the basis for the entire '746 Patent application and approval.

106.    Additionally, the Blouches made a false representation to Alpha Cognetics that they returned all of Alpha Cognetics' property, when in fact, they were still in possession of the Alpha Cognetics Drawings (and perhaps other Alpha Cognetics property).

107.    At the time of these representations, the Blouches were both aware of the true

ownership of the Alpha Cognetics Drawings and the actual inventor of the flute antenna element

and that Alpha Cognetics had the exclusive rights to the intellectual property therein.  Thus, they

had knowledge of the falsity of their statements at the time they were made.

108.    The Blouches intended that the USPTO would rely upon the false representation

in evaluating the patent application and in ultimately approving the '746 Patent.

109.    The Blouches also intended that Alpha Cognetics would rely upon the false

representation in response to the demand for return of Alpha Cognetics' property and Alpha

Cognetics Drawings.

110.    The USPTO was not aware of the true Inventorship of the flute antenna element,

and Alpha Cognetics was not aware that the Blouches had refused to return the Alpha Cognetics

Drawings.

111.    The USPTO and Alpha Cognetics both rightfully relied on the Blouches' material

false representations.

112.    Alpha Cognetics has been damaged as a proximal result of the fraud.

**COUNT IX: VIOLATION OF THE LANHAM ACT – 15 U.S.C. § 1125**

113.    Alpha Cognetics realleges and incorporates by reference the allegations of the

preceding paragraphs.

114.    Defendants made false and misleading statements about the Alpha Cognetics

Antenna to Codan and are believed to have made similar statement on the Department of

Homeland Security's Shared Resources "SHARES" HF radio network.

115.    Such actions either deceived or had the capacity to deceive a substantial segment

of potential customers.

116.     Such deception is material and likely to influence the consumer's purchasing decision.

117.     Upon information and belief, Defendants' antenna is in interstate commerce, as Mr. Blouch offered to sell Codan an antenna similar to that of Alpha Cognetics. It is not known at this time whether such antenna infringes on the '535 Patent.

118.     Alpha Cognetics has suffered damages as a result of Defendants' false statements of fact about the Alpha Cognetics Antenna and the Defendants' infringing antenna.

### COUNT X: COMMON LAW TRADEMARK INFRINGEMENT

119.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

120.     The term "flute antenna" and derivates thereof such as "flute antenna element" or "fluted antenna" is a common law trademark acquired by Ted Hart and later licensed and assigned to Alpha Cognetics as stated above.

121.     Defendants' use of the term "flute antenna element" in the '746 Patent and "Flute Antenna" in the June 20, 2018 email to Codan is without Alpha Cognetics' consent and is likely to confuse or deceive the public into believing that Defendants are associated with Alpha Cognetics in some fashion when, in fact, they are not.

122.     Defendants continue to use by reference the mark "flute antenna element" and "Flute Antenna" while knowing that such use is likely to cause actual confusion among consumers.

123.     Defendants' use in commerce of the Alpha Cognetics Antenna marks and design without Alpha Cognetics' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Alpha Cognetics.

124.     Such continued use of the Alpha Cognetics Antenna design infringes Alpha Cognetics' exclusive rights in the Alpha Cognetics Antenna in violation of Mississippi law.

125.     As a result of Defendants' actions, Alpha Cognetics has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

126.     Defendants' misconduct is willful within the meaning of Miss. Code Ann. § 75-25-23.

### COUNT XI: CIVIL CONSPIRACY

127.     Alpha Cognetics realleges and incorporates by reference the allegations of the preceding paragraphs.

128.     Mr. Blouch, Mrs. Blouch, and Advanced HF Solutions entered into an agreement to accomplish the unlawful purpose of obtaining the '746 Patent through fraud upon the USPTO and to accomplish the unlawful purpose of maliciously interfering with Alpha Cognetics' business relations and other torts alleged herein.

129.     Defendants' conspiracy caused Alpha Cognetics to suffer damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

**A.     INJUNCTIVE RELIEF**

That Defendants and all of their subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and their heirs, successors, and assigns, and all persons acting in concert or participation with it and each of them, be immediately enjoined and restrained, preliminarily and permanently, without bond, from (i) manufacturing, marketing, distributing, selling, or offering for sale antennas manufactured according to the '535 Patent and/or the Alpha Cognetics Drawings and (ii) from making any false statements or representations regarding the

Inventorship of the flute antenna element, the Alpha Cognetics Antenna, or any component thereof; and further that Defendants be required to immediately deliver to Alpha Cognetics for destruction all intellectual or physical or electronic property of Alpha Cognetics.

**B.    DECLARATORY RELIEF**

That the Court declare that the '746 Patent is unenforceable based on the Blouches' inequitable conduct; that the commercial manufacture, use, offer for sale, or sale of the Alpha Cognetics Antenna has not infringed any valid or enforceable claim of the '746 Patent; and that the '746 Patent is invalid.

**C.    DAMAGES**

That judgment be entered against Defendants in favor of Plaintiffs for:

(1)    All damages suffered by Alpha Cognetics as a result of the conduct of Defendants complained of herein;

(2)    An accounting for all revenue and profits obtained by Defendants as a result of the conduct complained of herein;

(3)    Treble damages where allowed by applicable law;

(4)    Attorneys' fees and costs recoverable under law;

(5)    Punitive damages in order to punish Defendants' willful and malicious conduct and to deter others from committing similar acts; and

(6)    Prejudgment and post-judgment interest.

**D.    JURY TRIAL**

Plaintiff demands trial by jury.

**E.    OTHER RELIEF**

Such other, further, or different relief as this Court may deem just and proper.

Dated, this the 6th day of July, 2018.

By: s/ John H. Dollarhide_____
John H. Dollarhide (MS Bar # 103655)
BUTLER SNOW LLP
Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS  39157
T: (601) 948-5711
F: (601) 985-4500
Email: john.dollarhide@butlersnow.com

Kathryn K. Van Namen (MS Bar # 104079)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
T:  (901) 680-7200
F:  (901) 680-7201
Email: kate.vannamen@butlersnow.com

*Counsel for Alpha Cognetics LLC and Alpha Cognetics Tech LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ALPHA COGNETICS LLC and**
**ALPHA COGNETICS TECH LLC**                                    **PLAINTIFFS**

**v.**                                               **Civil Action No. _____**

**ROGER BLOUCH, SUSAN BLOUCH,**
**and ADVANCED HF SOLUTIONS, INC.**                             **DEFENDANTS**

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Barrie McArthur, on behalf of Alpha Cognetics, LLC

and Alpha Cognetics Tech, LLC, declare under penalty of perjury that I have reviewed the

Verified Complaint in this action, and the matters and things set forth therein are true and correct

to the best of my knowledge, information, and belief based upon information currently available

to me.

Dated, this 6th day of July, 2018.


_____
Barrie McArthur

43081011.v1